Lessie Williams, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued March 5, 1981, before President Judge Crumlish and Judges Blatt and Craig, sitting as a panel of three.

*Dana McBride Breslin,* with her *Jill Christine Duson,* for petitioner.

*Douglas Ethan Block,* Assistant Attorney General, for respondent.

Opinion by Judge Craig, March 27, 1981:

This petition for review is on behalf of Lessie Williams, a 71-year old nursing home patient who has

been receiving skilled nursing care under the Medical Assistance Program since May, 1979. Following an evaluation by a Medical Review Team, including consultation with the attending physician, the County Assistance Office (CAO) on November 27, 1979 issued a notice of proposed change from skilled to intermediate care, which could involve transferring the patient to another facility. An administrative appeal from that determination was sustained by a hearing examiner of the Department of Public Welfare, but the department's Office of Hearings & Appeals, on behalf of the Secretary, reversed that order and provided for transfer of the patient to an intermediate care facility if the present facility does not establish an intermediate care unit.

Petitioner's attack upon that departmental order of reversal is based on the view that 42 U.S.C. Section 1396a(a)(19), requiring the Medicaid program to be administered in conformity with the "best interests" of the recipient patients, is violated by the failure of the pertinent state regulation, Pennsylvania DPW Medical Assistance Manual §9424, to provide specifically for a specialist's assessment of the psychological effect which a transfer from a skilled nursing care facility to an intermediate care facility could have upon the patient ("transfer trauma").

Medical Assistance Manual §9424.54 requires that evaluations be made by a Medical Review Team headed by a physician and including nurses and "appropriate technical and/or professional personnel", as well as CAO personnel; and the team is to evaluate the care needed by the patient, the care being provided, the ability of the facility's personnel, and the feasibility of providing alternate services. Medical Assistance Manual §9424.1 states the basic objective of the program as assuring "the availability of high quality nursing facility services to all eligible recipients in

need of these services..." The same section calls for consideration of skilled nursing services "as long as the patient's need exists."

The scope of the criteria expressed in the regulations, and the expertise of the professional personnel which they require, are both sufficiently broad to embrace considerations of the impact of transfer upon the patient, as one of the many aspects of the patient's needs and situation being evaluated. We cannot say that the procedure falls short of providing for the best interests of the patient, as a matter of law, on the ground that it does not mandate the involvement of a medical specialist for that particular problem. There is no statutory or constitutional basis for requiring specialist physicians; any need for consultation with specialists can best be determined by the Medical Review Team. In fact, the record in this case includes a psychiatric consultation report.

The United States Supreme Court, and the Pennsylvania Supreme Court as well, have held that the possibility of transfer trauma does not constitute a foundation sufficient on which to base a constitutional right to limit or forbid the transfer of a patient from one care facility to another. *O'Bannon v. Town Court Nursing Center*, 441 U.S. 904, 100 S.Ct. 2467 (1980); *Bell v. Thornburgh*, Pa. , 420 A.2d 443, 450 (1980).

With respect to the specifics of the reversal, the final decision by the department is not inconsistent with the findings and statements of the hearing examiner, which included the following:

[The patient] is continent and requires little or no help with daily living activities....

The [patient] is alert, oriented though somewhat negative. The [patient] was upset and agitated at the [previous] relocation ... but has become acclimated to her present surroundings....

> The [patient's] medical condition is stable and she is able to perform her daily living activities largely on her own indicating that she is appropriate for intermediate nursing care....

The hearing examiner's decision, to keep the patient in the present skilled care facility, was apparently based only upon testimony of the nursing home's director of nursing that

> [The patient's] movement [transfer] would be detrimental for her as her family is very near to [this] Center especially her son who are close to her and visit very frequently. Go into emotional fade.

This testimony, which obviously is based upon the convenience of the skilled care location for family visitation rather than the patient's personal condition, does not constitute substantial evidence in support of skilled care, especially in relation to the hearing examiner's statement as to the appropriateness of intermediate nursing care and the ample evidence supporting that statement.

Thus the department committed no abuse of discretion in placing final reliance upon the hearing examiner's own findings in support of intermediate nursing care, rather than upon the insubstantially-founded concern about transfer.

We affirm the final decision of the department.

### ORDER

AND NOW, March 27, 1981, the order of the Department of Public Welfare, by the Office of Hearings & Appeals, dated March 27, 1980, is hereby affirmed.

This decision was reached prior to the expiration of the term of office of Judge WILKINSON, JR.